STATE OF NORTH CAROLINA v. ADOLPH CHRISTIE

No. 8926SC303

(Filed 7 November 1989)

1. **Criminal Law § 146.5 (NCI3d)— guilty plea—notice of appeal—timely**

    The State's motion to dismiss as untimely defendant's appeal from a guilty plea to possession of marijuana with intent to sell or deliver was denied where the transcript clearly states that defendant gave verbal notice of appeal to the district attorney in open court and filed a notice of appeal on the same date.

    **Am Jur 2d, Appeal and Error §§ 316, 317; Criminal Law § 490.**

2. **Searches and Seizures §§ 3, 14 (NCI3d)— narcotics—search of bus passenger—no seizure—valid consent**

    Defendant was not seized within the meaning of the Fourth Amendment when officers boarded a bus on which he was a passenger or when they began questioning defendant and, furthermore, marijuana found in defendant's baggage was collected pursuant to a valid search with defendant's consent where defendant was a passenger on a Greyhound bus which he had boarded in Houston, Texas; the Charlotte Police Department employed the source city concept in its drug enforcement efforts, which identifies major coastal cities associated with drug smuggling, including Houston; officers boarded the bus, making no announcements to the passengers; they wore police jackets but no uniforms and displayed no weapons; they began questioning passengers at the rear of the bus, talking in a non-threatening manner and positioning themselves so that the person to whom they were speaking and others not yet questioned were not barred from leaving; an officer noticed that defendant appeared to exhibit some characteristics asso-

ciated with the drug courier profile; the officer showed defendant his credentials and asked to talk with defendant; defendant replied "sure" and pointed out his bags and a jacket; defendant was visibly nervous; the officer told defendant he was not in custody or under arrest and requested permission to search defendant and his luggage; defendant responded, "sure, go ahead"; marijuana was found in defendant's bag and defendant replied affirmatively when asked if he had marijuana in his bag; and defendant was then placed under arrest. Defendant was not seized in a Fourth Amendment context until he was arrested and his consent for the search of his bags could not have been more freely given.

**Am Jur 2d, Searches and Seizures §§ 16, 48, 100, 101.**

APPEAL by defendant from *Snepp (Frank W.), Judge.* Judgment entered 21 October 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 21 September 1989.

Defendant was charged with possession with intent to sell marijuana under G.S. 90-95 on 27 April 1988. On 14 July 1988, defendant moved to suppress evidence of approximately 25 pounds of marijuana found in his suitcase. The suppression hearing was held before Judge Frank W. Snepp on 18 August 1988, and defendant's motion to suppress was denied.

Defendant entered notice of appeal of the denial of his motion on 21 October 1988 prior to entry of his guilty plea. On the same date, defendant pled guilty to possession of marijuana with intent to sell or deliver before Judge Chase B. Saunders. Defendant received an active sentence of two years' imprisonment.

From the order denying his motion to suppress the evidence, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Marilyn R. Mudge, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant-appellant.*

ORR, Judge.

[1] The State moved to dismiss defendant's appeal before this Court on 17 April 1989, alleging that it did not receive timely

notice of appeal prior to defendant entering his guilty plea. Defendant responded and provided a transcript of the beginning of defendant's plea on 21 October 1988. This transcript clearly states that defendant gave verbal notice of appeal to the district attorney in open court and filed a notice of appeal on the same date. We find this sufficient to meet the requirements of G.S. 15A-979(b) and *State v. Reynolds*, 298 N.C. 380, 259 S.E.2d 843 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed.2d 795, 100 S.Ct. 2164 (1980), and therefore deny the State's motion to dismiss this appeal.

[2]  The State's evidence at the hearing on 18 October 1988 tended to show that on 27 April 1988 defendant was a passenger on Greyhound bus 1371 which he boarded in Houston, Texas. The bus made several scheduled stops including one in Charlotte, North Carolina.

For approximately eight months prior to 27 April 1988, the Charlotte Police Department had employed the "source city concept" in its drug enforcement efforts. This concept identifies major coastal cities which have been associated with a high incidence of drug smuggling, including Houston, Texas and New Orleans, Louisiana. In conjunction with city identification, the police investigate the transportation of illegal drugs on buses passing through Charlotte. The investigation consists of police officers boarding certain buses from source cities with permission of the driver and station manager and talking to the passengers. Officers board the bus close to the scheduled departure time to identify passengers with their luggage.

The two officers boarding the bus make no announcements to the passengers. They do not wear uniforms (except for police jackets, commonly known as riot jackets) and display no weapons. When questioning passengers, they begin at the rear of the bus, talk in a non-threatening manner, and position themselves such that the person to whom they are speaking and others they have not yet questioned would not be barred from leaving. If a passenger chooses to leave the bus, he or she will not be followed.

On 27 April 1988, narcotics investigator Gerald P. Sennett and S.B.I. agents Becker and Akers received permission from the station manager and bus driver to board bus 1371 to conduct the above described "source city" investigation. Prior to 27 April 1988, drug arrests had been made involving passengers on the same bus route. None of the law enforcement officials had a search

STATE v. CHRISTIE

[96 N.C. App. 178 (1989)]

warrant because there was no probable cause to believe illegal drugs were on board.

Officer Sennett and Agent Becker boarded the bus approximately ten minutes prior to the expected departure time while Agent Akers remained outside with the bus driver. The door to the bus remained open. As Officer Sennett proceeded to the rear of the bus to begin questioning passengers, he observed defendant and noted that defendant exhibited some characteristics associated with the drug courier profile. During his questioning of other passengers, Officer Sennett noted that defendant turned around and looked back at the officers four or five times. Although other passengers also turned around, none did so as often as defendant.

Officer Sennett reached defendant in approximately four minutes. Defendant sat in an aisle seat with one bag and a jacket on the seat next to him. The aisle between defendant and the door was clear. Officer Sennett showed defendant his credentials and asked to talk with him. Defendant answered, "Sure." Defendant told Officer Sennett that he was returning to Washington, D.C., from a three-week vacation in Houston, Texas. He identified his bag and jacket in the seat next to him and a matching bag overhead.

When defendant produced his identification, he was visibly nervous. He was sweating, his hands were shaking, and his breathing was heavy and irregular. Defendant's behavior and the fact that defendant was traveling from a source city raised Officer Sennett's suspicion that defendant may have been carrying drugs. Officer Sennett testified that he was also concerned about concealed weapons because of the lack of security checks of bus passengers and because weapons are frequently found on or near persons carrying drugs.

Officer Sennett explained to defendant that he was a narcotics officer looking for illegal drugs and requested permission to search defendant and his luggage. Officer Sennett told defendant that he was not in custody or under arrest. Defendant responded, "Sure, go ahead," and started to pick up the bag and jacket on the seat next to him. At the same time, defendant started to put his hands up, although he had been told that he was not under arrest. Officer Sennett told defendant that he was not under arrest and that he (Officer Sennett) did not want to embarrass him.

Agent Becker then joined Officer Sennett and reached across defendant to search the small bag or defendant. Officer Sennett

STATE v. CHRISTIE

[96 N.C. App. 178 (1989)]

retrieved defendant's bag from the overhead shelf and noticed that it was heavy. When he unzipped the bag, he observed white powder, three trash bags and fabric softener sheets. He noticed that there was an odor of marijuana.

Officer Sennett then asked defendant if he (defendant) had marijuana in his bag, and defendant responded affirmatively. Officer Sennett placed defendant under arrest. Agent Akers then boarded the bus, handcuffed defendant and took him off the bus. The police officers displayed no weapons at any time, and no one touched defendant prior to his arrest. The substance in defendant's bag was approximately 25 pounds of marijuana.

After defendant's arrest, Officer Sennett and Agent Becker completed questioning the remaining passengers. The entire procedure from the time the officers first boarded the bus took approximately ten minutes, and the bus was not late departing the station.

The trial court found the following facts and denied defendant's motion to suppress.

> First, law enforcement agents did not 'seize,' within the meaning of the fourth amendment, a commercial passenger bus carrying Christie when, during a brief rest stop at a bus terminal, two of them went aboard the bus, with the bus driver's permission, for the purpose of questioning the passengers. Second, the agents did not seize Christie when they approached him on the bus, asked him questions, and obtained his consent to searches of both his person and of two bags located near him. Third, Defendant Christie was seized when Sennett arrested him after discovering the marijuana in his bag. Fourth, the evidence gathered is admissible since it was collected pursuant to a valid search. For these reasons Defendant's Motion to Suppress should be denied.

(Exceptions omitted.)

Defendant argues that the trial court erred in not suppressing evidence of marijuana seized from defendant's luggage because the police officers had no reasonable and articulable suspicion that anyone on the bus was engaged in criminal activity. Further, defendant maintains that he was illegally "seized" because a reasonable person would not feel free to leave the bus and that his consent to search his luggage was not freely given.

STATE v. CHRISTIE

[96 N.C. App. 178 (1989)]

The Fourth Amendment allows reasonable searches and seizures based upon probable cause. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). However, not every contact between a police officer and a citizen rises to the level of a "seizure" or is one which requires objective justification. *Sibron v. New York*, 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889 (1968). There is no seizure of an individual until a police officer demonstrably restricts an individual's liberty. *Id.* at 63, 20 L.Ed.2d at 935, 88 S.Ct. at 1889.

In *United States v. Mendenhall*, 446 U.S. 544, 64 L.Ed.2d 497, 100 S.Ct. 1870, *reh'g denied*, 448 U.S. 908, 65 L.Ed.2d 1138, 100 S.Ct. 3051 (1980), the United States Supreme Court refined the above principles and stated:

> We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
>
> . . .
>
> We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id.* at 553-54, 64 L.Ed.2d at 509-10, 100 S.Ct. at 1877 (citations and footnote omitted). *Accord, Michigan v. Chesternut*, 486 U.S. 567, 100 L.Ed.2d 565, 108 S.Ct. 1975 (1988).

Defendant argues that he was illegally "seized" when the officers first boarded the bus, when the officers positioned themselves and began questioning him, and that the "seizure" was more intrusive than necessary to effectuate the investigative purpose. We disagree.

Applying the above rules of law to the case before us, we affirm the trial court's finding that defendant was not "seized" in a Fourth Amendment context until he was arrested. First, he was not seized when the officers boarded the bus. Only two officers boarded the bus; they did not display any weapons; they did not use threatening language or a compelling tone of voice; and they did not block or inhibit defendant in any way from refusing to answer their questions or leave the bus. While defendant may have felt restrained from leaving the bus by the officers' presence, he had no reason to feel such restraint.

The *Mendenhall* standard of whether a reasonable person would have believed that he was not free to leave is an objective standard, not subjective. In these circumstances, we believe that a reasonable person would have believed that he was free to leave the bus and free to refuse to answer questions. The officers did not create by their actions or appearances either physical or psychological barriers to any passenger who wanted to leave the bus. *See United States v. Rembert*, 694 F.Supp. 163 (W.D.N.C. 1988).

We further note that no seizure was found under these exact circumstances in *United States v. Rembert*, 694 F.Supp. 163 (W.D.N.C. 1988). Like our defendant, Rembert argued that he was seized at the bus terminal when officers boarded a bus upon which he was a passenger. The court found that the boarding was entirely consensual, *citing INS v. Delgado*, 466 U.S. 210, 80 L.Ed.2d 247, 104 S.Ct. 1758 (1984). The officers "did not enhance in any way the restricting characteristics of the bus interior by their mere presence on the bus." *Rembert*, at 174. *See also United States v. Whitehead*, 849 F.2d 849 (4th Cir. 1988), *cert. denied*, --- U.S. ---, 102 L.Ed.2d 566, 109 S.Ct. 534 (1988) (AMTRAK police did not seize defendant on train when they first entered his roomette with consent).

STATE v. CHRISTIE

[96 N.C. App. 178 (1989)]

Second, defendant was not seized when the officers began questioning him. The evidence tended to show that the aisle was not blocked by anyone at any time prior to the actual search. The officers were entirely non-threatening in their appearance and conduct. Applying the reasonable person standard of *Mendenhall*, a reasonable person in defendant's position would not have felt that he was compelled to stay in his seat and answer the questions. *See Rembert* at 175.

Third, a seizure did not occur because the officers' boarding the bus was not more intrusive than necessary. In *United States v. Sokolow*, 490 U.S. ---, 104 L.Ed.2d 1, 109 S.Ct. 1581 (1989), the United States Supreme Court held that "[t]he reasonableness of an officer's decision . . . does not turn on the availability of less intrusive investigatory techniques." *Id.* at ---, 104 L.Ed.2d at 12, 109 S.Ct. at 1587. Moreover, we find in the case *sub judice* that the officers' actions were not more intrusive than necessary. Officer Sennett testified that they wanted to question the passengers on the bus to identify them with their luggage. There was no other way to make such identification when the bus was not either loading or unloading all of the passengers and their luggage.

Defendant further maintains that his consent to search his luggage was not freely given. We disagree. Officer Sennett specifically told defendant that he was not under arrest. When Officer Sennett then requested to search defendant's bags and person, defendant responded, "Sure, go ahead." Such consent could not be more freely given.

Although defendant was not informed of his right to refuse to consent to a search, it does not make his consent inherently involuntary. *State v. Long*, 293 N.C. 286, 293, 237 S.E.2d 728, 732 (1977), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041 (1973).

For the reasons set forth above, we hold that defendant was not "seized" within the meaning of the Fourth Amendment when law enforcement officers boarded the bus or when they began questioning defendant. Further, we hold that the marijuana found in defendant's bags was collected pursuant to a valid search with defendant's consent.

No error.

Judges WELLS and JOHNSON concur.