I respectfully dissent from the majority decision.
The majority opinion recites a portion of Deputy Garrick's testimony to support its conclusion appellant was not under arrest prior to the blood draw. Upon review of Deputy Garrick's entire testimony, it appears the portion relied upon by the majority relates only to appellant's status while at the hospital. The deputy's testimony that appellant was never under arrest and never in custody may have been limited to the officer's understanding of appellant's status after he had been transported to the hospital or as a misunderstanding of the technical meaning of arrest.
Prior to the testimony referenced in the majority opinion, Deputy Garrick testified about his conversation with appellant prior to appellant's transport to the hospital.
 Q. Did you say anything to him at this point about, about his options?
 A. I, I advised him that I did feel that he was under some kind of an influence of an alcoholic beverage. And I advised him that his only other option was to go with me and do some tests at the Sheriff's Office, being the standardized field sobriety tests, and offered to take any blood alcohol content, machine, or the breath machine at the Stark County Sheriff's Office.
Q. And what happened after that?
 A. I believe he was coursed (sic) by the EMS crew to go to the hospital to be checked out.
 Q. How would you describe the Defendant's demeanor at this point, Deputy?
 A. He was very somber; spoke very little. I, I still believe that he was in some kind of shock due to the accident. But he was very — he answered yes or no, he did answer my questions; he wasn't combative with me then, until I told him that he was going to go, that I was going to take him to do some tests and inevitably be booked into the Stark County Jail.[1]
 As to his intention prior to arriving at the hospital, Deputy Garrick testified:
 Q. What, Deputy Garrick, were you intentions at this point?
 A. My intentions at this point were to go to Mercy Medical Center — first of all, assess the situation to see if he was going to be admitted, if he had any internal injuries or anything like that. And, to get a legal blood draw.
Q. And in, in regards to the FRA Suspension?
A. I'm sorry?
 Q. What were your intentions regarding the FRA Suspension?
 A. It is our policy at the Stark County Sheriff's Officer to, if you are caught driving under FRA Suspension, that you are immediately arrested and your vehicle is impounded.
Q. All right.
 A. It was my intention that if his injuries weren't severe, that he would be taken to the Stark County Sheriff's Office.
 Q. What difference would it make if his injuries were severe?
 A. Umm, it's also a policy at the Stark County Jail that if their injuries were severe, or if they have some kind of injuries due to an . . . . an automotive accident, that they're just let go on summons.
 Q. Okay. Which was the case in this particular incident?
 A. After confirming with my Supervisor, he said, he stated to me that if he did have injuries, just to let him go on summons.
 Q. All right. So after, the — so at some point, you made it out to Mercy Medical Center?
A. Correct.
Q. And did you make contact with the Defendant there?
A. Correct.
Q. All right. Tell me what happened then.
 A. He was not aware that I was going to let him go on summons. . .[2]
When considering this portion of Deputy Garrick's testimony, the trial court found:
 6. The defendant was advised that if he refused to transport to the hospital, he would be taken to the Stark Count Jail for testing.
7. The defendant chose to go the hospital.[3]
Applying the Darrah[4] test to these circumstances, I believe there was evidence of intent on the part of Deputy Garrick to arrest appellant prior to the defendant's request to be transported to the hospital, under real authority, accompanied by constructive seizure of appellant, and so understood by appellant. Deputy Garrick's statement appellant was never under arrest and appellant was never in custody may have been understood by Deputy Garrick as meaning only actual physical seizure/arrest. In determining when a person is arrested, a reviewing court should ask, in view of all the circumstances surrounding the incident, would a reasonable person believe he or she was not free to leave.[5] The officer's subjective belief as to the status of appellant's custody does not control our decision.[6] The fact Deputy Garrick did not intend to take actual physical custody of appellant after appellant had been transported to the hospital, does not negate the constructive seizure/arrest of appellant which occurred prior to his transport to the hospital. Likewise, the fact Deputy Garrick elected to issue a summons at the hospital rather than take actual physical custody of appellant does not negate his constructive seizure/arrest which occurred prior to his transport.
I would affirm the judgment of the trial court.
[1] Tr. at 20-21, emphasis added.
[2] Tr. at 22-23.
[3] March 16, 2001 at 1, unpaginated.
[4] State v. Darrah (1980), 18 Ohio St.3d 193.
[5] State v. Stringer (Feb. 24, 1999), Scioto County App. No. 97CA2506, unreported, at * * 9, citing United States v. Hammock860 F.2d 390, 393.
[6] Id. at * * 10.