**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bryan Andrew HAMMOCK,**
**Defendant–Appellant.**

No. 88–8040.

United States Court of Appeals,
Eleventh Circuit.

Nov. 18, 1988.

Fredric W. Tokars, CPA, Atlanta, Ga., for defendant-appellant.

Robert L. Barr, U.S. Atty., William L. McKinnon, and Julie Carnes, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

PER CURIAM:

## I.

On August 18, 1987, the appellant, Bryan Andrew Hammock, was a passenger on a Trailways bus that was traveling from Miami to Atlanta. When the bus pulled into the Greyhound Bus Terminal in Ft. Lauderdale, Detectives John Bukata and Robert Trawinski, members of the Broward County (Florida) Sheriff's Department, obtained the driver's permission to get on board. The detectives were engaged in a drug interdiction program that attempts to identify and arrest drug couriers by monitoring buses, trains, and airplanes heading north from Ft. Lauderdale. The detectives were dressed in casual street clothing, but they wore jackets that identified them as members of the sheriff's office. The detectives' weapons were not visible.

Following their usual procedure, the detectives immediately went to the rear of the bus and began quickly to work their way forward. Detective Bukata identified himself to individual passengers and asked whether the passenger would speak with him for a moment. If the passenger consented, the detective typically gave a brief explanation of the program, and asked the passenger to identify his luggage. Before Detective Bukata reached the appellant, who was seated in the third row, appellant turned toward the detectives and said, "So you are with the Sheriff's Department. What are you looking for, drugs?" In response, Detective Bukata indicated that he would be with the appellant in a minute.

When Detective Bukata reached the appellant, he identified himself and asked appellant if appellant would speak with him. The appellant answered, "Yes." Detective Bukata then asked whether appellant had any luggage on the bus. In response, the appellant stood up and removed a white

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

plastic bag from the overhead rack, stating, "This is mine." When the detective then asked whether the appellant had other bags on board the bus, the appellant responded, "No, this is all I got." The detective observed that a blue tote bag was lying next to the place from which the appellant had retrieved his plastic bag, and he asked appellant whether the tote bag also belonged to him. The appellant repeated his statement that only the white plastic bag was his. Throughout this conversation, both detectives remained slightly behind appellant's seat so that the aisle was clear for him to leave the bus, if he should have wanted to do so.

The detectives then went through the bus, asking whether the blue tote bag belonged to anyone. When no passenger claimed the bag, the detectives took the bag off the bus. Upon searching the bag, the detectives found a clear plastic bag containing one kilogram of cocaine, a pair of size 30 jeans, some tropical shirts, and a numbered and dated receipt from a tropical shirt shop in Miami.

Believing that the appellant was the only passenger in the front area of the bus who could wear a size 30 pair of jeans, Detective Bukata reentered the bus and asked the appellant if he would consent to a search of his person. The appellant agreed. The detective then advised the appellant that the search was voluntary and that he had a right to refuse. Appellant stood up and began to empty his pockets. Detective Bukata inserted his hand in one pocket and discovered a receipt from a tropical shirt shop bearing the same date and the next sequential number as the receipt found in the blue tote bag. The detective then arrested the appellant for trafficking in cocaine.

The appellant was given the *Miranda* warnings and questioned concerning his involvement in the drug trade. The appellant gave the detectives several accounts, but finally admitted that he had known that a kilogram of cocaine was in the tote bag. The appellant also admitted that he had abandoned the bag. Subsequently, appellant cooperated with the government and participated in a controlled delivery of the cocaine to his accomplice.

A federal grand jury subsequently indicted the appellant for conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 (1982). Prior to trial, the appellant moved to suppress the cocaine discovered in the tote bag as the fruit of an illegal search and seizure. Following an evidentiary hearing, which established the facts set forth above, the district court denied the motion. Thereafter, the appellant entered a conditional plea of guilty and was sentenced. The appellant now challenges the district court's denial of his motion to suppress.

## II.

The appellant admits that when he refused to identify the blue tote bag as his possession, he abandoned the bag. As one commentator has stated:

> The significance of abandoned property in the law of search and seizure lies in the maxim that the protection of the fourth amendment does not extend to it. Thus, where one abandons property, he is said to bring his right of privacy therein to an end, and may not later complain about its subsequent seizure and use in evidence against him. In short, the theory of abandonment is that no issue of search is presented in such a situation, and the property so abandoned may be seized without probable cause.

Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 Buff.L. Rev. 399, 400–01 (1971); *see, e.g., Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960) ("There can be nothing unlawful in the Government's appropriation of [ ] abandoned property."). Appellant, however, does not argue that the seizure and search of the tote bag was in itself unconstitutional; rather, the appellant argues that because the detectives had unconstitutionally arrested him before they discovered the tote bag, the evidence found therein must be suppressed as the fruit of the poisonous tree.

In determining when appellant was arrested, we ask at what point, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart & Rehnquist, JJ. concurring); *see also Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (majority of Justices adopting *Mendenhall* reasonable person standard). In applying this standard, the courts have pointed to certain circumstances that indicate an arrest. These circumstances include the blocking of an individual's path or the impeding of his progress; the retention of a ticket or piece of identification; an officer's statement that the individual is the subject of an investigation, or that a truly innocent person would cooperate with the law enforcement officer; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual. *See, e.g., Mendenhall*, 446 U.S. at 554–55, 100 S.Ct. at 1877–78; *United States v. Berry*, 670 F.2d 583, 597 (5th Cir. Unit B 1982) (en banc).[1]

The facts of this particular case show that the detectives were careful not to obstruct appellant's path to the exit nor did they act in a threatening manner. Appellant, moreover, initiated the conversation with the detectives, rather than the reverse. We recognize that actions by law enforcement officers that would not constitute an arrest in, for example, an airport environment, *see, e.g., Berry*, 670 F.2d at 594–95, might constitute an arrest when used to interdict drug couriers traveling by bus because of the inherent limitations on a bus passenger's freedom of movement. The officers in this case, however, appear to have recognized this and took great pains to ensure that passengers would feel free to exit. Thus, on the facts of this particular case, we cannot conclude that the trial court was clearly erroneous when it found that a reasonable person would have felt free to leave the bus. The trial court's denial of appellant's motion to suppress was therefore proper.

AFFIRMED.

---

1. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.