STATE OF NORTH CAROLINA v. FRANK TURNER, Defendant

No. 8810SC935

(Filed 5 July 1989)

**Searches and Seizures § 20— warrantless arrest and search of bus passenger — probable cause to believe drugs being transported**

Sufficient reasonable grounds existed to believe that defendant possessed and was transporting illegal drugs, and his warrantless arrest and search were therefore lawful, where defendant, a passenger on a bus, had the same point of departure and destination as a man arrested minutes before defendant for transporting "crack"; both men had Jamaican accents; the arresting officer observed a bulge in defendant's pants which was similar in size and shape to ball-shaped packages found on the other suspect; and defendant refused to explain the bulge when questioned by the detective.

APPEAL by defendant from Judgment of *Judge Robert L. Farmer* entered 13 June 1988 in WAKE County Superior Court. Heard in the Court of Appeals 22 March 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Robin W. Smith, for the State.*

*David H. Rogers for defendant appellant.*

COZORT, Judge.

Defendant was arrested and was charged with trafficking cocaine by possession and transportation. Defendant moved to suppress the evidence on the grounds that his arrest was illegal because it was made without probable cause. The trial court denied defendant's suppression motion. Defendant gave notice of intention to appeal the denial of the motion and entered a plea of guilty to both charges in accordance with a negotiated plea bargain. The appeal is before us pursuant to N.C. Gen. Stat. § 15A-979. We affirm.

The facts are essentially undisputed. On 25 January 1988, Ronnie Stewart, detective with the Wake County Sheriff's Department, and Terry Turbeville, agent with the State Bureau of Investigation, were working at the Raleigh Bus Terminal and were part of a narcotics interdiction operation. As part of that program they periodically boarded buses to search for people they thought to

be drug couriers. On the day in question, they boarded a bus day traveling from Miami, Florida, to New York City.

Starting from the back of the bus, the two officers interviewed all the passengers. They identified themselves as law enforcement officers as they went from person to person. They were also wearing jackets which indicated they were law enforcement officers. The bus was stopped, and the doors were open. Passengers were entering and exiting the bus while the officers conducted interviews.

Detective Stewart and Agent Turbeville interviewed defendant and a man named Dwight Ricketts, who was seated near defendant, and discovered that both men departed from Ft. Lauderdale, Florida, and were bound for Winchester, Virginia. Detective Stewart testified that both defendant and Mr. Ricketts had what he thought were Jamaican accents. In response to questions, defendant denied that he was traveling with Mr. Ricketts.

While the officers spoke to Mr. Ricketts, Agent Turbeville observed several bulges in Mr. Ricketts' coat. The coat was lying in the seat next to him. Agent Turbeville requested Mr. Ricketts' permission to search the coat. Mr. Ricketts responded by attempting to flee. He was caught and arrested outside of the bus. After Mr. Ricketts was placed under arrest, Agent Turbeville, with Detective Stewart present, searched Mr. Ricketts and discovered four round ball-shaped objects hidden in the lining of Ricketts' coat. Each of these objects was about the size of a tennis ball and was wrapped tightly with duct tape. The officers cut into one of the balls and, based on their experience and familiarity with illegal drugs, determined that it contained a cocaine-type substance commonly known as "crack." While Mr. Ricketts was placed in custody, Detective Stewart returned to the bus.

Detective Stewart went directly to defendant's seat and asked defendant to stand. When defendant stood Detective Stewart observed a bulge in defendant's pants just below his belt. The bulge looked "identical" to the balls which had been removed from Ricketts' coat. Detective Stewart asked defendant what the bulge was and defendant gave no reply. The officer asked defendant again if he was traveling with Mr. Ricketts and defendant gave no reply. After getting no response to his questions, Detective Stewart placed defendant under arrest, reached into defendant's pants and retrieved the round ball which was wrapped in duct tape. He opened the tape and discovered a substance he identified as "crack." De-

fendant was charged with trafficking cocaine by possession and transportation.

Defendant's only assignment of error was to the entry of the order denying the motion to suppress. He did not assign error to any of the trial court's findings of fact, among them a finding that, prior to being arrested, defendant was free to leave the bus. Nonetheless, defendant argues that he was illegally seized before being formally arrested when he was ordered to stand up and was asked questions about the bulge in his pants. At oral argument defendant asked this Court to review the sufficiency of the evidence to support the trial court's findings under the plain error exception to Rule 10 of the Rules of Appellate Procedure. *See, e.g., State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). We have done so and find no error. Thus, since the evidence supports a finding that defendant was free to leave up until the time that he was arrested, the Fourth Amendment "seizure" occurred in this case when defendant was arrested. *See United States v. Mendenhall*, 446 U.S. 544, 64 L.Ed. 2d 497, 100 S.Ct. 1870 (1980); and *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968).

Accordingly, the issue is whether there was probable cause to arrest defendant, considering (1) that defendant had the same point of departure and destination as a man arrested minutes before defendant for transporting "crack," and (2) that the bulge the officer observed in defendant's pants was similar in size and shape to the ball-shaped packages found on the other suspect. We hold that the officers had probable cause to arrest defendant.

The United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures*, shall not be violated . . . ." U.S. Const. amend. IV (emphasis added). An arrest is a seizure and is unreasonable if not based on probable cause. 1 W. Lafave and J. Israel, *Criminal Procedure* § 3.3(a) at 184 (1984). Probable cause to arrest exists when there are reasonable grounds to believe a crime has been committed and that the suspect committed it. *State v. Streeter*, 283 N.C. 203, 207, 195 S.E. 2d 502, 505 (1973).

The size, shape, and position of the bulge Detective Stewart observed in defendant's pants gave the officer reasonable grounds to believe that defendant was transporting illegal drugs. *United States v. Lehmann*, 798 F. 2d 692, 694 (4th Cir. 1986); *Wright*

*v. State*, 418 So. 2d 1087, 1091 (1982), *rev. denied*, 426 So. 2d 29 (1983). First, the size and shape of the bulge the officer observed on defendant was similar to the size and shape of the packages of cocaine found on Mr. Ricketts minutes before defendant's arrest. In fact, the cocaine package taken from defendant's trousers was ball-shaped and wrapped tightly in duct tape in the same fashion as the packages taken from Ricketts. Second, the tennis ball-shaped bulge Detective Stewart saw in defendant's pants was, according to the officer's testimony, just below defendant's belt and above the crotch. The position of the bulge gave the officer reasonable grounds to conclude that it was not part of defendant's anatomy. *See id.* Furthermore, the officer testified that drugs are often transported inside clothing. Third, defendant's refusal to explain the bulge when questioned by Detective Stewart, immediately after another passenger was arrested with similar sized and shaped packages, gave the officer additional grounds to believe that defendant possessed illegal drugs. *United States v. Ilazi*, 730 F. 2d 1120, 1127 (8th Cir. 1984).

Finally, Detective Stewart knew from his previous interviews that defendant and Mr. Ricketts departed from the same city, Ft. Lauderdale, Florida, and were both destined for the same city in Virginia. The officer also testified that both men had Jamaican accents. Moreover, while defendant denied that he was traveling with Mr. Ricketts when the officers conducted their initial interviews, defendant said nothing when Detective Stewart asked defendant a second time if he was traveling with Mr. Ricketts after Ricketts was arrested and defendant was told to stand. The cumulative effect of all of the evidence furnished sufficient reasonable grounds to believe that defendant possessed and was transporting illegal drugs. Since the arrest was lawful, the warrantless search of defendant was also lawful. *Streeter*, 283 N.C. at 207, 195 S.E. 2d at 505.

Affirmed.

Judges PHILLIPS and PARKER concur.