**STATE v. JOHNSON**

[98 N.C. App. 290 (1990)]

STATE OF NORTH CAROLINA v. BERNARD ANTHONY JOHNSON

No. 8912SC466

(Filed 1 May 1990)

1. **Searches and Seizures § 3 (NCI3d)— search of luggage on bus—defendant not seized by officers**

   The trial court correctly concluded in a prosecution for trafficking in cocaine that neither the bus on which defendant was riding nor defendant were seized by officers during a rest stop when two officers boarded the bus and began asking passengers questions regarding their travel destinations, where they had begun their journeys, and which bags belonged to whom. The officer who spoke with the passengers did not shout or talk in a loud manner, the officers were not acting in a hostile manner, the bus door was open at all times, and officers did not block passenger ingress and egress. There is no seizure of a person until an officer demonstrably restricts that person's liberty.

   **Am Jur 2d, Arrest §§ 1, 3; Searches and Seizures § 37.**

2. **Searches and Seizures § 15 (NCI3d)— trafficking in cocaine— bus search—abandoned luggage—no expectation of privacy**

   The trial court correctly found in a prosecution for trafficking in cocaine that defendant did not have a reasonable expectation of privacy in certain luggage and therefore did not have standing to contest the search and seizure of that luggage where officers boarded a bus during a rest stop and began asking passengers about the origin and destination of their journey and which bags belonged to whom, one bag had not been claimed after officers had spoken with all of the passengers, the officers asked each passenger including defendant whether the bag belonged to them, no one claimed the bag, and officers removed the bag from the bus and searched it. Defendant lost all legitimate expectations of privacy he may have had in the luggage when he denied he owned or controlled the luggage.

   **Am Jur 2d, Searches and Seizures §§ 9, 21.**

STATE v. JOHNSON

[98 N.C. App. 290 (1990)]

3. **Searches and Seizures § 15 (NCI3d) — trafficking in cocaine — search of luggage on bus — luggage abandoned — no standing**
   Defendant lacked standing to assert a constitutional violation rising from the search of luggage which he had abandoned on a bus where officers boarded a bus during a rest stop, questioned passengers about the origin and destination of their journeys and about which luggage belonged to whom, one suitcase remained unclaimed, and defendant and all other passengers denied ownership of the suitcase.

   **Am Jur 2d, Searches and Seizures §§ 9, 21.**

4. **Constitutional Law § 28 (NCI3d); Searches and Seizures § 1 (NCI3d) — trafficking in cocaine — search of luggage found on bus — Fourth Amendment law and reasoning — determinative of rights under North Carolina Constitution**
   The law and reasoning applicable to the Fourth Amendment of the U.S. Constitution in a search of luggage on a bus was also determinative of defendant's rights under the North Carolina Constitution.

   **Am Jur 2d, Searches and Seizures §§ 9, 21.**

   Judge ORR concurring.

APPEAL by defendant from judgment entered 15 December 1988 by *Judge Giles R. Clark* in CUMBERLAND County Superior Court. Heard in the Court of Appeals 16 November 1989.

Defendant was arrested and charged with trafficking in cocaine by possession and trafficking in cocaine by transportation. Defendant's pretrial motion to suppress cocaine discovered during a search of luggage found on a Greyhound bus was denied. Defendant pled guilty to trafficking in cocaine by possession and the State dismissed the trafficking by transportation charge. Pursuant to G.S. 15A-979 defendant appeals the denial of his motion to suppress.

At the suppression hearing the State's evidence tended to show that defendant was a passenger on a New York bound bus that arrived in Fayetteville from Florida. Two State Bureau of Investigation (SBI) officers entered the bus while it was stopped for a 30 minute rest stop and began asking the passengers questions regarding their travel destinations and where they had begun their journeys. The officers also asked which bags belonged to whom.

The officers began at the back of the bus and worked their way forward. After the officers had spoken with all of the passengers on the bus, one bag located in the front of the bus had not been claimed. The officers asked each passenger including the defendant whether the bag belonged to them; no one claimed the bag. The officers then removed the bag from the bus and searched it. Inside the bag they found approximately eight (8) ounces of cocaine and a traffic citation issued in Tampa, Florida. The name on the citation was illegible. The officers then reboarded the bus and asked the passengers to produce identification. Defendant was the only passenger with a Tampa address on his driver's license. Additionally, although the name on the traffic citation was illegible, the date of birth on defendant's driver's license was the same birthday and month as shown on the traffic citation (although the year was different). The officers requested that defendant get off of the bus. When he did, the officers again asked him if the luggage belonged to him. Defendant denied ownership of the bag. The officers looked through the bag again and found a pair of jeans with the initials "BJ" on the inside. The officers then arrested defendant Bernard Anthony Johnson.

Defendant's testimony was dissimilar from the State's evidence. Defendant testified that the officers boarded the bus and began shouting at the passengers, demanding who owned which bags. Defendant also testified that other passengers' bags were searched without the owners' permission.

The trial court made the following findings of fact:

1. On November 3, 1987, the Defendant was a passenger on a Greyhound Bus bound from Florida to New York. . . . The Greyhound Corporation has given police officers permission to board the buses on these stop over occasions, and the officers had permission to do so on this occasion. . . . Ronald Steenestre was an operator from Fayetteville to Richmond, Virginia. Mr. Steenestre was standing outside the bus when the officers entered, but he has no independent rememberance [sic] of what happened on November 23, 1987. . . . The Greyhound Corporation has also given officers permission to search any bag not accompanied by an individual.

\* \* \*

STATE v. JOHNSON

[98 N.C. App. 290 (1990)]

3. Officers Turbeville and Campbell entered the bus. Officer Campbell had on regular street clothes. Office[r] Turbeville asked those present, which was a majority of the passengers on the bus, if they would mind talking to him, and where they were coming from or going. He asked if he could speak to them for a moment, and if they have [sic] bags and which ones are [sic] theirs. Officer Turbeville did not shout or talk in a loud manner. He was the only Officer talking. The officers were not acting in a hostile manner. The officers did not grab bags and start searching. . . .

4. There was one remaining black bag on the front of the bus that no one claimed after being asked by the officers. The officers searched this bag and it contained white powder cocaine. Also, inside the bag as [sic] a traffic ticket issued in Tampa to the Defendant. A pair of pants inside the bag had B.J. stamped on the inside of them. Everyone on the bus was asked for identification and all complied. The traffic citation and Defendant's identification contained a one (1) year difference as to the date of birth.

5. . . . No one, including the Defendant claimed the black bag before it was seized and searched. Officer Turbeville had asked, "Does this bag belong to anyone?" No one replied. . . .

* * *

7. From the time that the officer entered the bus until the find in the black bag took only about ten (10) minutes. The bus left within a total of fifteen (15) minutes of this find, and its departure was not delayed on this occasion. At all times the bus door was open.

* * *

9. That at no time did any of the officers prevent anyone from entering or leaving the bus, and that under under [sic] all the circumstances surrounding the incident a reasonable person would have believed he was free to leave the bus and refuse to allow their [sic] baggage to be searched.

*Attorney General Thornburg, by Associate Attorney General Jane R. Garvey, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Assistant Appellate Defender Gordon Widenhouse, for defendant-appellant.*

EAGLES, Judge.

Defendant asserts that the trial court erred in denying his motion to suppress. Defendant argues that the court erred in concluding there was no seizure of the bus, its occupants or defendant by the SBI officers when they boarded the bus with the driver's permission. Defendant also argues that the evidence did not support the conclusion that the luggage was abandoned. Finally, defendant argues that once the luggage was in the custody of the law enforcement officers they needed a search warrant to have authority to search the luggage.

Our scope of review of an order denying a motion to suppress evidence is "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). We conclude that the trial court's findings of fact were amply supported by the evidence and that these findings of fact support the conclusion that the luggage was abandoned. Because the luggage was abandoned, defendant had no legitimate expectation of privacy in the luggage and the contraband found in it could properly be admitted into evidence.

[1] Not every contact between a police officer and a citizen rises to the level of a "seizure" or is one which requires objective justification. *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968). There is no seizure of a person until an officer demonstrably restricts that person's liberty. *Id.*

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

STATE v. JOHNSON

[98 N.C. App. 290 (1990)]

*United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509-10, *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980) (citation omitted).

Defendant argues that the evidence shows that a reasonable person in his position would not feel free to leave. Defendant points to the testimony of various bus drivers. None of the drivers remembered this specific incident. Nevertheless they testified that normally an officer stood at the front of the bus, the bus doors were shut, and the departure of the bus was delayed by the officers. Defendant relies on *United States v. Hammock*, 860 F.2d 390 (11th Cir. 1988), to argue that the circumstances surrounding bus searches are confining and lead reasonable people to believe they are not free to leave. Defendant places particular reliance on the following passage from *Hammock*:

> We recognize that actions by law enforcement officers that would not constitute an arrest in, for example, an airport environment, might constitute an arrest when used to interdict drug couriers traveling by bus because of the inherent limitations on a bus passenger's freedom of movement.

*Id.* at 393 (citation omitted). However, on facts substantially similar to this case, the *Hammock* court held that defendant was not seized or arrested by officers. Therefore, the *Hammock* court held that the trial court did not err in denying defendant's motion to suppress. Here, the trial court found that the officer who spoke with the passengers did not shout or talk in a loud manner, the officers were not acting in a hostile manner, at all times the bus door was open, and that the officers did not block passenger ingress and egress. Based on these facts the trial court concluded that neither the bus nor defendant were seized by the officers during the period of time they spoke to the passengers. The evidence of record supports these findings.

We note two recent decisions from this court where similar circumstances were not considered a seizure of the passengers or the bus. *See State v. Christie*, 96 N.C. App. 178, 385 S.E.2d 181 (1989) (defendant passenger on bus was not seized when officers boarded the bus and officers did not display weapons, did not use threatening language or a compelling tone of voice, and did not block or inhibit defendant in any way); *State v. Turner*, 94 N.C. App. 584, 380 S.E.2d 619, *appeal dismissed and disc. rev. denied*, 325 N.C. 549, 385 S.E.2d 508 (1989) (defendant, who officer

asked to stand after person sitting near him on bus and who had departed from same city as defendant had been arrested for possession of narcotics, was free to leave until he was placed under arrest).

[2] The trial court also found that defendant did not have a reasonable expectation of privacy in the bag and therefore concluded that defendant did not have standing to contest the search and seizure. This finding was the basis for the court's conclusion that the bag was abandoned property. Defendant relies on *State v. Cooke*, 54 N.C. App. 33, 282 S.E.2d 800 (1981), *aff'd*, 306 N.C. 132, 291 S.E.2d 618 (1982), in which the court stated that a defendant's "disclaimer of ownership does not necessarily constitute an abandonment signifying the relinquishment of his privacy interest in the contents of the suitcase." *Id.* at 43, 282 S.E.2d at 807. Defendant argues that his denial of ownership was the result of unlawful police conduct and therefore not a voluntary relinquishment of an expectation of privacy. We disagree. The officer's actions while asking the passengers questions were lawful. It was during this lawful police conduct that defendant and all other passengers denied ownership of the luggage. Nothing else appearing, abandonment of personal property in the face of lawful police inquiry does not render the abandonment involuntary. *See State v. Cromartie*, 55 N.C. App. 221, 284 S.E.2d 728 (1981). Here defendant lost any legitimate expectation of privacy he may have had in the luggage when he denied he owned or controlled the luggage.

[3] Defendant's final argument is that the search of the luggage, once the police had it in their exclusive control and possession, was unconstitutional because the officers did not have a warrant. Defendant relies on *State v. Thomas*, 81 N.C. App. 200, 343 S.E.2d 588, *disc. rev. denied*, 318 N.C. 287, 347 S.E.2d 469 (1986), in which the court stated that once officers had a suitcase in their exclusive control and no exigent circumstances existed the agents could not lawfully search the luggage without first obtaining a warrant. Defendant's reliance is misplaced. In *Thomas* the suspect was asked questions by SBI officers while he waited for luggage at an airport baggage claim. After the suspect retrieved his luggage the officers requested that he accompany them to another room. While in the room the officers obtained information amounting to probable cause to arrest the suspect; after he was arrested they searched the luggage. The State attempted to argue that the search was a valid search incident to arrest. This court disagreed.

## STATE v. JOHNSON

[98 N.C. App. 290 (1990)]

The facts here are neither similar nor analogous to those in *Thomas*. Here, no one on the bus claimed an interest in the luggage. It had been abandoned for purposes of fourth amendment inquiry.

> [W]here one abandons property, he is said to bring his right of privacy therein to an end, and may not later complain about its subsequent seizure and use in evidence against him. In short, the theory of abandonment is that no issue of search is presented in such a situation, and the property so abandoned may be seized without probable cause.

Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 Buffalo L. Rev. 399, 400-401 (1970-1971). *See, e.g., Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687 (1960) ("There can be nothing unlawful in the Government's appropriation of [ ] abandoned property."). Defendant has no "standing" to assert a constitutional violation arising from the search of luggage that he had abandoned.

[4] Finally, defendant argues that the North Carolina Constitution provides an independent basis for suppression of the evidence found in the luggage. On this record we are not persuaded. We conclude that the law and reasoning applicable to the fourth amendment in this case is also determinative of defendant's rights under the North Carolina Constitution. *See State v. Isleib*, 319 N.C. 634, 356 S.E.2d 573 (1987).

Accordingly, we affirm the denial of defendant's motion to suppress.

Affirmed.

Judges PARKER and ORR concur.

Judge ORR concurring.

I concur with the majority opinion that defendant was not unconstitutionally seized when the bus on which he was a passenger was subjected to an investigatory stop by law enforcement officials. *See State v. Christie*, 96 N.C. App. 178, 385 S.E.2d 181 (1989); *State v. Turner*, 94 N.C. App. 584, 380 S.E.2d 619, *appeal dismissed and disc. review denied*, 325 N.C. 549, 385 S.E.2d 508 (1989).

STATE v. JOHNSON

[98 N.C. App. 290 (1990)]

I further concur in the result with the majority opinion that defendant did not have a reasonable expectation of privacy in the suitcase searched by law enforcement officers. I find that defendant waived any reasonable expectation of privacy he had in the suitcase when he verbally denied ownership or control of the suitcase when specifically asked by the law enforcement officers. *See, generally, California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Tolbert*, 692 F.2d 1041 (6th Cir. 1982).

The line of cases addressing this issue and cited by defendant and the State indicate, however, that there must be some *affirmative statement or action* by a defendant to disclaim a piece of property before it may be considered abandoned property and, therefore, opened and searched for contraband. For example, I do not believe that the search in the case before us would have been constitutionally permissible if the police officer had held the suitcase up before all of the passengers and asked if anyone on the bus owned it. If no one affirmatively denied ownership of the suitcase, it would not become immediately abandoned for search and seizure purposes. To hold otherwise would mean that any piece of luggage not claimed *immediately* becomes "abandoned" and subject to search and seizure.

The law is clear on this issue. When a person does not clearly disclaim ownership of property, or if a person maintains possession of a suitcase while denying ownership, the officer should not consider the suitcase or other property abandoned. *United States v. Sanders*, 719 F.2d 882 (6th Cir. 1983); *State v. Casey*, 59 N.C. App. 99, 296 S.E.2d 473 (1982).

The key element in the case *sub judice* that made the search constitutionally permissible was defendant's affirmative statement that the suitcase was not his. At that point, defendant no longer had a reasonable expectation of privacy in the suitcase, and cannot now assert an expectation of privacy after the fact.