[Cite as *State v. Clark*, 2026-Ohio-447.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 25CA32 |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| DANIEL C. CLARK, | : | |
| | : | |
| Defendant-Appellee. | : | **RELEASED: 02/05/2026** |

<u>APPEARANCES:</u>

Jeffrey C. Marks, Ross County Prosecuting Attorney and Alisa Turner Assistant Prosecuting Attorney for appellant, the State of Ohio.

James Boulger, Chillicothe, Ohio for appellee.

Wilkin, J.

{¶1} This is an appeal by the State of Ohio from a Ross County Court of Common Pleas judgment entry that granted appellee, Daniel C. Clark's ("Clark") motion to suppress evidence. In its sole assignment of error, the State asserts that the trial court erred when it granted Clark's motion to suppress. After reviewing the parties' arguments, the law, and the record in this case, we find that the trial court did not err in granting Clark's motion to suppress. Therefore, we affirm the trial court's decision that granted Clark's motion to suppress the evidence.

BACKGROUND

{¶2} On June 20, 2025, the State charged Clark with aggravated possession of methamphetamine in violation of R.C. 2925.11, which is a second-degree felony.

{¶3} On August 7, 2025, Clark filed a motion to suppress the State's evidence. His motion alleged that Ross County Lieutenant McGoye ("McGoye") was dispatched to investigate a trespass complaint on a "dead-end portion of Plano Road" when he encountered Clark and a female companion in a parked car. The motion asserted there was a small sign indicating camera surveillance, but no sign prohibiting trespassing.

{¶4} The motion claimed that McGoye approached the vehicle and informed Clark and his companion that they were trespassing. Clark told McGoye that there was a pellet gun "in the back." Clark maintained that McGoye then ordered him out of the vehicle and placed him in handcuffs, telling him that " 'it does not mean that you are going to jail.' "

{¶5} After McGoye conducted a consensual pat-down search of Clark, he had the female exit the vehicle and placed her in handcuffs as well. The motion contended that McGoye began questioning them about why they were on this property. Clark claimed they had the owner's permission.

{¶6} The motion claimed that after further discussion, McGoye told Clark and his companion that they might not be charged with trespassing. He then requested dispatch to contact the property owner to determine if he wanted to press charges. The dispatcher informed McGoye that the owner wanted to press charges. McGoye then began searching Clark's car and found a baggie

containing a crystalline substance.  The State charged Clark with trespassing and aggravated possession of methamphetamine.[1]

{¶7} Clark's motion argued that McGoye lacked probable cause to believe he knowingly trespassed, as there was no posted sign and the property was frequently used by others.  He further argued that even if McGoye had probable cause to believe Clark was knowingly on the property, no arrest was made before the vehicle was searched and the baggie with crystalline substance was discovered.  Therefore, Clark claimed that the search leading to the drug discovery was conducted without a warrant, and, as a result, the court should suppress the drugs found in his vehicle.

{¶8} In response, the State acknowledged that no one "could point to the exact moment an arrest was legally effective with certainty."  Yet, the State argued that the evidence should not be excluded because it would have been discovered "in the lawful course of action."  The State maintained McGoye was not attempting to act unlawfully; he had a reasonable good-faith belief that he was conducting an inventory search of Clark's vehicle.

{¶9} Absent McGoye's "oversight" in failing to inform Clark that he was under arrest, the search would have been a lawful inventory search.  Therefore, the State moved the court to deny Clark's motion to suppress.

{¶10} On September 12, 2025, the court held a suppression hearing.  The State called a single witness, McGoye.  McGoye stated that he was wearing a

---

[1] The trespassing charge, which was a fourth-degree misdemeanor was resolved separately in municipal court and is not part of the State's appeal.

body cam that recorded his encounter with Clark.  The video was then played for the judge.

{¶11} The video shows McGoye exiting his patrol vehicle and walking down a leaf-covered roadway until he sees Clark's vehicle.  As he approaches the vehicle, it can be seen that there is a sunshade in its front windshield.  McGoye approaches the partially-open window of the back passenger door on the driver's side and asks the occupants to put their hands on the dash.  With his sidearm drawn, McGoye then opened the driver's door and informed Clark and his female companion that they were trespassing.  McGoye asked if there were any guns or knives, and Clark advised that there was a "pellet gun in the back."

{¶12} Pursuant to McGoye's request, Clark exited his vehicle, and McGoye handcuffed him, explaining that he was alone, Clark was trespassing, and he needed to assess the situation.  While McGoye was handcuffing Clark, he informed Clark that this did not mean he was going to jail.  After receiving consent, McGoye conducted a pat-down search of Clark.  McGoye then checked Clark's license, which confirmed his identity.  McGoye had Clark move to the front of the car, then he had Clark's companion exit the vehicle and handcuffed her as well.

{¶13} McGoye again informed Clark and his companion that they were trespassing, but that did not necessarily mean they would be "charged or ticketed."  He called dispatch and asked that the property owner be contacted and asked if they wanted to press charges.  Shortly thereafter, dispatch informed

McGoye that the property owner wanted to pursue a trespassing charge. McGoye then asked dispatch to acquire the property owner's contact information.

{¶14} McGoye informed Clark and his companion that there was a no-trespassing sign and a camera on the property, which they denied seeing. After briefly discussing with Clark and his companion why they believed they could be on the property, McGoye left them handcuffed at the front of Clark's vehicle and proceeded to search Clark's vehicle. McGoye inquired about the pellet gun, and Clark responded that it was in the back. McGoye unsuccessfully attempted to open the rear hatch and then proceeded to search the back-passenger seat on the driver's-side, examining a small black pouch, a small case, and the pocket on the back of the driver's seat. He then looked over the seat into the rear-storage area and located the pellet gun. McGoye then proceeded to search the driver's-seat area and discovered a baggie containing a crystallized substance near a boot on the floor, which formed the basis of the drug charge in this case.

{¶15} Immediately after discovering what appeared to be contraband in the baggie, McGoye requested dispatch to send the "next available 31[,]" which Clark claimed is the code for requesting a tow truck. McGoye then proceeded to the front of the vehicle and read Clark and his companion their *Miranda* rights. He reminded both of them that the property owners wanted to press charges and, therefore, they would be charged for trespassing. He then stated: "keeping your rights in mind, there's a little blue bag with crystal stuff in it[,]" i.e., the baggie he discovered in Clark's vehicle. Clark denied knowledge of the baggie. Later during the detention, McGoye requested dispatch to inform Detective Davidson

that Clark's vehicle would be towed, and Clark and his companion were going to jail. Although there was additional video that showed McGoye continuing his search of Clark's vehicle, the arrival of McGoye's backup, etc., none of it is probative in addressing the State's appeal.

{¶16} On direct examination, McGoye testified that he decided to arrest Clark instead of issuing a summons after learning the property owner wanted to press charges. He stated that "when people are caught actively trespassing on property, I generally take the person to jail." McGoye explained that he conducted an inventory search of Clark's vehicle since it was going to be towed. McGoye testified that a plea deal was reached on the trespass charge that resulted in Clark being convicted.

{¶17} McGoye stated that the baggie that contained the crystalline substance, which he suspected was drugs, was sent to the lab for testing.

{¶18} Defense counsel then cross-examined McGoye. McGoye confirmed that he told both Clark and his companion that being handcuffed did not mean they were going to jail. McGoye also confirmed that he never explicitly told either of them they were under arrest when dispatch informed him that the owner wanted to press charges, but that it was nevertheless at that moment he decided he was going to arrest them. Defense counsel asked McGoye: "Now the, uh, decision to impound the vehicle, that was made after the search, wasn't it?" McGoye:

> No, the, if they were both being arrested, which is what was my intent, as soon as I heard that the property owners wanted them charged, again, I didn't vocalize this out loud to myself or anybody else, but when I find people actively trespassing on someone

else's property, I usually take them to jail unless there's extinu, some kind of extenuating circumstances, but I also realize about that time that hey, I am still by myself, backup still hasn't arrived and is it's taking my officer this long to get here, it's going to take the tow truck longer to find us, so I might as well get ahead of the game and call for a tow truck now, versus wait until everything is done.

**{¶19}** McGoye testified that he did not expect to find any evidence to support a trespassing charge in Clark's vehicle. He stated that the search was to inventory property since Clark was going to jail and his vehicle was going to be towed.

**{¶20}** After the hearing, the court announced its decision in open court and issued a one-page entry reflecting that decision. The court granted Clark's motion to suppress adopting the reasoning from Clark's "post hearing memorandum." Clark's post-hearing memorandum maintained that two minutes prior to learning that the property owner would press trespassing charges, McGoye had suggested to Clark and his companion that they might not be charged or go to jail. Yet, two minutes later, when McGoye and Clark overheard the dispatcher indicate that the property owner wanted to press changes, the deputy did nothing "to divest [them] of that notion[.]" Further, despite testifying that he wanted to "get ahead of the game and call for the tow truck now[,]" McGoye did not call for a tow truck until immediately after he discovered the baggie of drugs in Clark's vehicle. It was then that he also approached Clark and his companion and read them their *Miranda* rights.

**{¶21}** From these facts, consistent with Clark's memorandum, the court inferred that McGoye did not arrest Clark until after he discovered the baggie of

drugs in Clark's vehicle.  Consequently, because the baggie was seized without a warrant and no exception applied, the court found that the seizure of the baggie was unreasonable and excluded it from evidence.  It is this judgment that the State appeals.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT GRANTED THE
DEFENDANT'S MOTION TO SUPPRESS.

{¶22} The State argues that the trial court's determination that Clark was not under arrest at the time that the inventory search began is not supported by competent credible evidence.  The State acknowledges that McGoye never explicitly told Clark that he was under arrest prior to searching Clark's vehicle, but claims that such words are not required to constitute an arrest.  The State posits that any confinement beyond that permitted for an investigative detention permitted by *Terry v. Ohio*, 392 U.S. 1 (1968) is integral in determining what constitutes an arrest.  Citing *Dunaway v. New York*, 442 U.S. 200, *Florida v. Royer*, 460 U.S. 491, and *State v. Mauer,* 15 Ohio St. 3d 239, the State claims that "if one is deprived of his movement by the State, he is in custody and considered under arrest."

{¶23} The State asserts that when dispatch informed McGoye that the property owner wanted to press charges, it was also heard by Clark.  The State claims that Clark "visibly reacted and appeared upset."  The State maintains that Clark was clearly aware that he was going to be charged at that point in time.  The State claims that being handcuffed and now being aware that he was facing

criminal trespass charges was sufficient to put Clark on notice that he was under arrest.

{¶24} The State also argues that Clark's vehicle could not remain on private property following his arrest. An inventory search is routine practice when vehicles are impounded. Thus, the State contends that McGoye conducted an inventory search to document any of Clark's belongings in the vehicle, which did not require probable cause. In the course of that search, McGoye discovered a baggie containing a crystalline substance on the driver's side floor. The State maintains that this discovery was lawful under the inventory search exception, one of the few exceptions where a warrant is not needed to search private property.

{¶25} Even if there was a technical violation, the State argues that the exclusionary rule should not be applied because the evidence discovered during the inventory search of Clark's vehicle would have been inevitably discovered through lawful means—specifically, when the vehicle was towed and inventoried after the occupants were arrested and transported to jail, as required by departmental policy for all towed vehicles. The State further contends that McGoye acted with an objectively reasonable, good-faith belief that his actions were lawful because he was alone in a remote location, the suspects were inevitably going to jail after the property owner pressed charges, and the administrative inventory search was undertaken in accordance with established practice rather than as a pretext for investigation. Additionally, the State asserts that suppression would not achieve any appreciable deterrent effect because

there was no unlawful intent or attempt to circumvent constitutional protections, and, therefore, applying the exclusionary rule would place the State in a worse position than if the evidence had never been discovered, contrary to its intended purpose.

{¶26} In response, Clark maintains that the State's assertion that the trial court erred in granting his motion to suppress is predicated upon an invited error. Clark claims that the State's post-suppression hearing brief conceded that he was not under arrest prior to the initial search.  Thus, the State cannot now be permitted to argue that Clark was lawfully arrested prior to the initial search.

{¶27} Clark further argues that there was no lawful impoundment of Clark's vehicle.  McGoye's discovery of drugs in Clark's vehicle prior to his arrest cannot provide the basis for a lawful impoundment of Clark's vehicle.  Clark maintains that an inventory search must follow a lawful impoundment, by conduct that complies with a standard practice or policy, and cannot be a pretext for a search for evidence.

{¶28} Clark also notes that the State presented no evidence of any policy from the Ross County Sheriff's Office regarding searches of impounded vehicles. Therefore, the trial court could not determine if such a policy could have lawfully justified McGoye's impoundment of Clark's vehicle.

{¶29} Finally, Clark contends that the search resulting in the discovery of drugs was not conducted in good faith.  He asserts that determining whether an item is seized in good faith requires the decision to be "objectively reasonable under the circumstances."  Without a guiding policy from the Ross County

Sheriff's Office regarding inventory searches, it is impossible to determine whether McGoye's actions in searching Clark's vehicle were in good faith.

### A. Law

#### 1. Standard of Review

**{¶30}** "Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact." *State v. Tidwell*, 2021-Ohio-2072, ¶ 18, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions." *Id*., citing *Burnside* at ¶ 8.

**{¶31}** "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures." *State v. Johnson*, 2014-Ohio-5400, ¶ 13 (4th Dist.), citing *State v. Orr,* 91 Ohio St.3d 389, 391 (2001). "These two provisions contain nearly identical language, and the Supreme Court of Ohio has interpreted them as affording the same level of protection." *Id*., citing *Orr* at 391. " '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.' " (Bracket original.) *Id*., quoting *Katz v. United States,* 389 U.S. 347, 357 (1967). "Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the

warrantless search or seizure was constitutionally permissible." *Id*., citing *State v. Roberts,* 2006-Ohio-3665, ¶ 98.

{¶32} If a search is found to be unreasonable, "[t]he exclusionary rule operates to exclude, or suppress, evidence that is derived from police conduct that violated constitutional protections." *State v. Hobbs*, 2012-Ohio-3886, ¶ 21, citing *Mapp v. Ohio,* 367 U.S. 643 (1961). "The rule is a judicially created sanction intended to safeguard constitutional rights by deterring Fourth Amendment violations." *Id*., citing *State ex rel. Wright v. Ohio Adult Parole Auth.,* 75 Ohio St.3d 82, 88 (1996). It is intended to deter "willful, or at the very least negligent, conduct [by law enforcement] which has deprived the defendant of some right.' " *U.S. v. Leon*, 468 U.S. 897, 919 (1984), quoting *U.S. v. Peltier*, 422 U.S., 531, 539 (1975). Therefore, the rule is not to be applied to exclude evidence that was ' "obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." ' *Leon*, at 909, quoting *Illinois v. Gates,* 462 U.S. 213, 255 (1983) (White, J., concurring in judgment).

2. Investigatory Detention and Arrest

{¶33} "An investigative stop, or *Terry* stop, under the Fourth Amendment allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity." *State v. Collins*, 2019-Ohio-1724, ¶ 20-22, (4th Dist.), citing *State v. Staten*, 2003-Ohio-4592, ¶ 22 (4th Dist.), citing *Terry v. Ohio*, 392 U.S. 1 (1968). During an investigatory stop the individual being investigated is not "free to go." *See State v. Heinhold*, 1988 WL 45553 (1st Dist. May 11, 1988). Yet, "a person detained as a result of a[n] [investigative stop] is

not in *Miranda* custody because such detention does not 'sufficiently impair [the detained person's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.' " (Third brackets original) *Howes v. Fields*, 565 U.S. 499, 510 (2012), quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). Thus, "the 'temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody[.]' " *Id*., quoting *Maryland v. Shatzer,* 559 U.S. 98, 113.

**{¶34}** "Generally, handcuffing and detaining an individual without probable cause constitutes an illegal arrest pursuant to the Fourth Amendment to the United States Constitution." *Vaughters v. Scioto Cnty., Ohio, Sheriff's Dep't*, 1997 WL 596298, *2 (4th Dist. Sept. 23, 1997), citing *Beck v. Ohio*, 379 U.S. 89, 94 (1964). "However, an officer may briefly detain a suspicious individual in order to determine his or her identity or to maintain the status quo while obtaining more information if specific facts known to the officer indicate that a crime is occurring or is about to occur." *Id*., citing *State v. Williams*, 51 Ohio St.3d 58, 60 (1990), citing *Terry v. Ohio*, 392 U.S. 1, 88 (1968). "Officers may [hand]cuff persons stopped pursuant to *Terry* for purposes of officer safety, without converting the encounter into an arrest." *State v. Drumm*, 2015-Ohio-2176, ¶ 16 (2d Dist.), citing *State v. White,* 2002 WL 63294, fn. 1 (2d Dist. Jan. 18, 2002), citing *State v. Bradley,* 1993 WL 69474, *2 (10th Dist. March 11, 1993).

**{¶35}** The Supreme Court of Ohio has recognized that "[a]n arrest, in the technical, as well as common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with

a crime." *State v. Darrah*, 64 Ohio St.2d 22, 26, citing *United States v. Bonanno*, 180 F.Supp. 71, (S.D.N.Y.1960). The Court has recognized that " [a]n arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.' " *State v. Barker,* 53 Ohio St.2d 135, 139 (1978). "Because this is a conjunctive test, all four of its factors must be satisfied to determine that [an arrest has occurred]." *Phillips v. Regina Heath Care*, 2024-Ohio-6012, ¶ 22 (9th Dist.).

{¶36} " 'In determining '*when*' an investigatory stop ripens into an arrest, no bright line exists. Instead, in determining whether an investigative detention is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." ' " (Emphasis added.) *State v. Ronald Stringer*, 1999 WL 105095, *8 (4th Dist. Feb. 24, 1999), quoting *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1509 (11th Cir. 1986), quoting *United States v. Sharpe*, 470 U.S. 675, 685 (1985). " 'In determining "when" a person is arrested, [a reviewing court should] ask at what point, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he [she] was not free to leave." ' " (Brackets original) *Id*. at *8, quoting *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989), quoting *United States v. Hammock,* 860 F.2d 390, 393 (11th Cir.1988).

> Furthermore, in determining when an arrest occurred, courts may consider the law enforcement officers' behavior. Courts may examine: (1) whether the officers touched the individual; (2) whether the officers displayed a weapon; (3) whether the officers handcuffed

the individual; and (4) the type of words spoken by the police officer. *Id.* at 110, Section 6.2. Whether the officers' conduct contributes to a finding that the officers arrested the individual "turns upon the degree of physical force and show of authority communicated by the police." *Id.* at 110, Section 6.2.

*Id.* at *10

{¶37} Additionally, "[i]t is well-settled that an officer's subjective view of whether probable cause existed to arrest the suspect is not dispositive of the issue." *Id.*, citing *Berkemer v. McCarty*, 468 U.S. 420 (1984). "Rather, the reviewing court should examine the objective facts and circumstances when determining whether the defendant was under arrest." *Id.*, citing Katz and Gianelli, Criminal Law, 107, Section 6.2 (1996). " '[C]ourts have disregarded officers' rationale for a search as inconclusive, finding that "it is of no importance that the police may have thought [regarding their authority to conduct a search]; the test is what could lawfully be done, not what the policemen thought the source of their power to be." ' " (Initial brackets original) *Id.*, at *9, quoting *State v. DiNickle*, 1993 WL 545142, *7 (11th Dist. Dec. 3, 1993) (Christely J. concurring), quoting *United States v. Ochs*, 595 F.2d 1247, 1256 (2d Cir. 1979).

{¶38} "The benefit of the objective custody analysis is that it is 'designed to give clear guidance to the police.' " *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011), quoting *Yarborough v. Alvarado,* 541 U.S., 652, 668 (2004). A court should examine the totality of the circumstances in determining when an investigative detention ripens into an arrest. *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)

3.   Inventory Search

**{¶39}** "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment —subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted). *Katz*, 389 U.S. 347, 357 (1967). "An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution." *State v. Goodin*, 2000 WL 134733, *3 (4th Dist. Jan. 28, 2000), citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "The purpose of an inventory search is 'aimed at securing or protecting the car and its contents.' " *State v. Williams*, 54 Ohio App.3d 117, 119, (4th Dist. November 3, 1988), quoting *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976). However, "[a] search which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an 'inventory search' and may not be used as a pretext to conduct a warrantless evidentiary search." *Id*., citing *State v. Caponi*, 12 Ohio St. 3d 302, 303 (1984).

**{¶40}** Further, "an inventory search is unlawful if it is not conducted in accordance with standardized procedures or policies." *State v. Catrell*, 1997 WL 414974, * 5 (4th Dist. July 21, 1997), citing *Colorado v. Bertine*, 479 U.S. 367, 370-71 (1987). Recently, the Supreme Court of Ohio has held that:

> the government's failure to submit a copy of written inventory-search procedures into evidence in support of a warrantless inventory search does not render the search per se unreasonable. We further hold that a law-enforcement officer's testimony that attributes an inventory-search policy to the law-enforcement agency that conducted the inventory search, explains when the policy must be followed, and explains whether the policy was followed, combined with body-camera footage documenting the

inventory search, is sufficient evidence to establish the existence of such procedures, that the officer who conducted the search acted in accordance with the policy, and that the search was reasonable, and therefore lawful, under the Fourth Amendment.

*State v. Toran*, 2023-Ohio-3564, ¶4.

### 4.  Criminal Trespass

**{¶41}** Finally, we note that criminal trespass is a fourth-degree misdemeanor offense.  *See State v. Wright*, 2021-Ohio-2692 (4th Dist.), ¶16.  "In misdemeanor cases where a law enforcement officer is empowered to arrest without a warrant, the officer may issue a summons in lieu of making an arrest, when issuance of a summons appears reasonably calculated to ensure the defendant's appearance."  Crim.R. 4(A)(3).  Therefore, when dealing with a person who has arguably committed a misdemeanor, the law enforcement officer has discretion whether to issue the defendant a summons or to arrest him or her.  *See City of Marysville v. Rausch*, 1979 WL 207871, *2 (3rd Dist. June 6, 1979).

### B.  Analysis

**{¶42}** When announcing its decision to the parties, the court stated: "I don't know that the facts are really in dispute, and I think this is literally, more a question of law that applies to it."  We agree, so our review is de novo.  Virtually the entire stop was recorded by the deputy's body cam.  Thus, it essentially comes to whether the search that resulted in the discovery of the methamphetamine was reasonable under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, i.e., it was supported by probable cause or whether there is some exception that otherwise

permitted the search.  One critical question that is pertinent in making this determination is when did McGoye arrest Clark.

**{¶43}** After having Clark exit his vehicle, McGoye handcuffed Clark and told him "I got to detain you for right now because I'm by myself, you guys are trespassing, I gotta figure out what's goin on here.  It doesn't mean you gotta go to jail."  McGoye never mentions Clark might be arrested.  As he is patting down Clark for any weapons he might possess, McGoye again tells Clark he is "investigating a trespass."  McGoye then ordered Clark's female companion to exit the vehicle and handcuffed her as well.

**{¶44}** McGoye again told Clark and his companion that they were "actively trespassing and committing a violation that doesn't necessarily mean you gotta get charged or ticketed, we don't know."  Based on McGoye's comments, we find that McGoye's handcuffing of Clark and his companion was to permit McGoye to conduct his investigation safely, considering he was the only law enforcement officer on the scene at that time.  Under these facts, we find that Clark was under an investigative detention.  Thus, he was not free to leave, but he was also not under arrest.

**{¶45}** Approximately 12 minutes into the detention, McGoye requested the dispatcher to contact the property owner to see if he wanted to press trespass charges.  Shortly thereafter, the dispatcher informed McGoye that the property owner wanted to press charges.  At the suppression hearing, McGoye testified that this is when he decided to arrest Clark and his companion.  However, putting McGoye's testimony aside, none of the factors of an arrest as outlined in *Stringer*

were present.  For example, McGoye maintained a relaxed demeanor, and

although Clark was handcuffed, it had been previously determined that this was

for McGoye's protection during the investigation, and not an indication of Clark

being under arrest.  *See Stringer*, 1999 WL 105095,  *8 (4th Dist. Feb. 24, 1999).

Further, while McGoye initially drew his firearm when approaching the idling car,

he holstered it after opening the driver's door and speaking with Clark and his

companion, and did not draw it again during the remainder of the detention.

Additionally, McGoye informed Clark on two separate occasions that he was

trespassing, but also stated that this did not mean that Clark would be jailed,

charged, or ticketed.

{¶46} Further complicating the analysis in this particular case is the fact

that charging Clark with trespass did not automatically mean he was under

arrest.  Because criminal trespass is a fourth-degree misdemeanor, McGoye

could have merely issued a summons for Clark to appear in court instead of

arresting him.  Although not legally required, McGoye could have, and perhaps

should have, informed Clark and his companion that they were under arrest once

he learned that the property owner wanted to press charges, which might have

prevented this appeal.  Instead, McGoye briefly chatted with Clark and his

companion about who allegedly allowed them on the property.

{¶47} Additionally, what is further notable and objectively quantifiable is

when McGoye called for a tow truck.  McGoye testified that because his backup

was taking so long to get to the scene, it would likely take the tow truck a long

time to find the property as well.  Therefore, he testified that he decided to get

"ahead of the game[,]" and would "call for the tow truck now, versus wait until everything is done." Yet, at no time prior to his search of Clark's vehicle, including after the dispatcher informed him that the property owner wanted to bring trespass charges, can McGoye be heard calling a tow truck. It was only after discovering contraband in Clark's vehicle that McGoye requested the "next available 31[,]" a tow truck. Objectively, this timing suggests that McGoye intended to arrest Clark only after finding the drugs.

{¶48} Also persuasive to our analysis is the timing of when McGoye read Clark and his companion their *Miranda* rights. Immediately *after* discovering the contraband and calling for the tow truck, McGoye returned to Clark and his companion and read them their *Miranda* rights. He further stated that "if [the owners] wanted to press charges, charges will be pressed, for trespass." McGoye continued: "Keeping your rights in mind, there's a little blue bag with crystal stuff in it[.]" Thus, McGoye's reading of Clark's and his companion's *Miranda* rights for both criminal trespass and the drugs occurred after discovery of the baggie. Again, objectively, we find that these actions support the conclusion that McGoye did not intend to arrest Clark for trespass until after findings the drugs in Clark's car.

{¶49} Viewing the totality of these circumstances using an objective standard, we reluctantly conclude that McGoye's investigative detention of Clark and his companion did not ripen into a custodial arrest until after he searched Clark's vehicle and discovered the contraband. This means that the contraband

was discovered during a warrantless search, and without an applicable exception to justify the search, it was unreasonable.

**{¶50}** The State argues that this court should determine McGoye was performing an inventory search of Clark's vehicle when he found the methamphetamine, which falls under an exception to the Fourth Amendment. The State maintains that McGoye, knowing that he was arresting Clark, conducted an inventory search because the vehicle would need towing. However, we have determined that McGoye did not arrest Clark until after finding the contraband, suggesting that the search may have been a pretext for a warrantless investigatory search. Notably, during the initial search that uncovered the contraband, McGoye was not wearing gloves or taking photographs. It was only after arresting Clark, following the discovery, that McGoye used gloves and took photographs when he resumed the search. This indicates that McGoye's search was investigatory, not for inventory purposes. Therefore, McGoye did not conduct a valid inventory search.

**{¶51}** Finally, the State argues that even if McGoye found the methamphetamine before he arrested Clark, McGoye had legal authority to arrest Clark and impound the vehicle, leading to its inevitable discovery. The State maintains that McGoye had no motive or intent to find evidence of a crime. Therefore, the State urges that the exclusionary rule should not be applied to exclude the evidence.

**{¶52}** Even if we were to assume McGoye acted improperly but in good faith in conducting an inventory search of Clark's vehicle, we cannot assess the

reasonableness of that search because the State did not provide sufficient evidence of any inventory search policy from the Ross County Sheriff's Office. No written policy was admitted, and McGoye's testimony and body cam footage were insufficient to determine if his search qualified as a valid inventory search. Aside from stating that a car is impounded when a person is arrested and searched, McGoye failed to explain when the policy must be followed or provide details on its implementation. Without the policy or a detailed explanation from McGoye, we cannot assess whether his search of Clark's vehicle was a reasonable inventory search.

{¶53} Therefore, we reject the State's assertion that the exclusion rule should not apply here.

CONCLUSION

{¶54} We must uphold constitutional protections, even when unpopular, as neglecting this duty erodes the foundational principles of our country. The evidence when viewed through an objective lens showed that McGoye did not arrest Clark until after discovering contraband in his vehicle, making the search warrantless and lacking a valid exception. Consequently, the search was unreasonable under the Fourth Amendment of the U.S. Constitution and Article I, Section 14 of the Ohio Constitution. Therefore, we find that Clark's motion to suppress should be granted, excluding the contraband from evidence, and we affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and the appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Smith, P.J. and Abele, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**